**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:12-cv-21328-KMM

CARMEL & CO, a Florida corporation d/b/a SEASPECS,

Plaintiff,

v.

SILVERFISH, LLC, a California corporation, and MARK RAZIN, an individual

Defendants.
_______________________________________/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

THIS CAUSE came before the Court upon the Motion to Dismiss filed by Silverfish, LLC and Mark Razin (ECF No. 30). Plaintiff filed a Response to Defendants' Motion to Dismiss (ECF No. 36). Defendants did not file a Reply and the time in which to do so has passed. The Motion is therefore now ripe for review. Upon consideration of the Motions, the pertinent portions of the Record, and being otherwise fully advised in the premises, this Court enters the following Order.

## I. BACKGROUND[1]

On April 6, 2012, Plaintiff Carmel & Co. d/b/a SeaSpecs (hereinafter "SeaSpecs") filed a complaint against Silverfish, LLC (hereinafter "Silverfish") and Mark Razin for trademark infringement, unfair competition, and trademark dilution. Seaspecs is a Florida corporation with

[1] The facts herein are taken from Plaintiff's Amended Complaint (ECF No. 26); Defendants' Motion to Dismiss and accompanying Declaration of Defendant Mark Razin (ECF No. 30); and Plaintiff's Response (ECF No. 36). All facts are construed in the light most favorable to Plaintiff as the non-movant.

its principal place of business in North Miami, Florida. Silverfish is a California business with its principal place of business in Laguna Beach, California. Mark Razin, a resident of Laguna Beach, California, is the managing member of Silverfish. SeaSpecs and Silverfish are both in the business of selling sunglasses for use in water sports.

Silverfish advertises its products using search engines with a pay per click advertising model. Silverfish identifies certain keywords and when potential customers use those keywords as search terms, Silverfish advertisements appear. Silverfish is allegedly using SeaSpecs' trademark such that Silverfish advertisements appear when potential customers search for SeaSpecs.

On October 16, 2012, the Court entered an Order (ECF No. 28) which granted Plaintiff's Motion for Jurisdictional Discovery and stayed the matter for sixty days for the parties to engage in jurisdictional discovery. On December 27, 2012, Silverfish and Mark Razin filed a motion to dismiss for lack of personal jurisdiction. Defendants' allege this Court lacks personal jurisdiction due to insufficient contacts with the instant forum.

## II. LEGAL STANDARD

This Court must address Defendants' claim that this Court lacks personal jurisdiction because "[a] court without personal jurisdiction is powerless to take further action." Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999). The Court will first consider the law as it pertains to Silverfish and secondly as it pertains to Mark Razin.

When considering a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by defendant's affidavits. See Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988); Corneal v. CF Hosting, Inc., 187 F. Supp. 2d 1372, 1373 (S.D. Fla. 2001); Venetian

Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989). Once the plaintiff pleads sufficient material facts to form a basis for personal jurisdiction, the burden shifts to the defendant to challenge the plaintiff's allegations by affidavits or other pleadings. See Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000); Venetian Salami Co., 554 So. 2d at 502. When the nonresident defendant meets this burden, the plaintiff must substantiate the jurisdictional allegations in its complaint by affidavits or other competent proof, and may not merely rely upon the factual allegations set forth in the complaint. See Future Tech. Today, Inc., 218 F.3d at 1249; Venetian Salami Co., 554 So. 2d at 502.

The court's determination of whether personal jurisdiction over a nonresident defendant exists requires a two-part analysis. D.W. Mercer, Inc. v. Valley Fresh Produce, Inc., 146 F. Supp. 2d 1274, 1276 (M.D. Fla. 2001). First, the Court must consider the jurisdictional question under Florida's long-arm statute. See id.; see also FLA. STAT. § 48.193. If there is a basis for the assertion of personal jurisdiction under the state statute, the Court will next determine "whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice." D.W. Mercer, Inc., 146 F. Supp. 2d at 1276 (citing Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996)). Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a non-resident defendant. See Robinson, 74 F.3d at 256.

"Because the reach of the Florida long-arm statute is a question of Florida state law, federal courts are required to construe it as would the Florida Supreme Court." Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889, 890–91 (11th Cir. 1983) (citing Moore v. Lindsey, 662 F.2d 354, 357–58 (5th Cir. 1981); Jetco Elec. Indus., Inc. v. Gardiner,

473 F.2d 1228, 1232 (5th Cir. 1973)). Furthermore, the Florida long-arm statute is to be strictly construed. Id. The plaintiff bears the burden of proving personal jurisdiction. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996).

**III. ANALYSIS**

A. Florida Long-Arm Statute

Defendants challenge personal jurisdiction under the Florida long-arm statute. Florida's long-arm statute authorizes courts to exercise specific jurisdiction under § 48.193(1), Florida Statutes, and general jurisdiction under § 48.193(2), Florida Statutes. Florida's long-arm statute states, in relevant part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state. . . .
>
> (b) Committing a tortious act within this state. . . .
>
> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

FLA. STAT. § 48.193(1) and (2).

"A court may exercise specific jurisdiction over a nonresident defendant only when the plaintiff's cause of action arises from or is directly related to a defendant's contacts with the forum state." Design-Build Concepts, Inc. v. Jenkins Brick Co., No. 06-CV-558, 2008 WL 686150, at *2 (N.D. Fla. March 10, 2008) (citing Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 n.3 (11th Cir. 2006)). Thus, specific jurisdiction requires connectivity, or in other words some "direct affiliation, nexus, or substantial connection between the cause of action and the [defendant's] activities within the state." Sun Trust Bank v. Sun Int'l

Hotels, Ltd., 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001) (internal quotation marks omitted) (quoting Citicorp Ins. Brokers (Marine) Ltd. v. J.R. Charman, 635 So. 2d 78, 81 (Fla. Dist. Ct. App. 1994)). General jurisdiction does not require a relationship nexus and applies to any defendant "engaged in substantial and not isolated activity within this state . . . ." FLA. STAT. § 48.193(2). This has been interpreted to mean "continuous and systematic general business contact" with Florida. Design-Build Concepts, Inc., 2008 WL 686150, at *2.

1. Silverfish

There are two possible assertions of Florida's long-arm statute to obtain specific jurisdiction over Silverfish: "conducting business" under § 48.193(1)(a) and "committing a tortious act within this state" under § 48.193(1)(b).

a. Florida Statutes § 48.193(1)(a)

This Court will have specific jurisdiction over Silverfish as it is conducting business pursuant to § 48.193(1)(a). "In order to establish that a defendant is carrying on business for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." Future Tech. Today, Inc., 218 F.3d at 1249 (internal quotation marks omitted). In determining whether a defendant conducts business in Florida, relevant factors include "the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005) (internal citations omitted).

A critical factor includes the percent of business directed at Florida. In Sculptchair it was sufficient that a defendant's sales efforts "amounted to three to five transactions grossing an

estimated $3,000." 94 F.3d at 628. "Although her sales efforts were sporadic at best and the revenue generated therefrom was relatively insignificant, we are left with the inescapable conclusion that her marketing efforts, viewed collectively, qualify as a general course of business activity in Florida for pecuniary benefit." Id. In Clover Systems, Inc. v. Almagran, S.A. the defendant was found to be engaged in carrying on a business or business venture in Florida. 2007 WL 1655377, at *4 (S.D. Fla. 2007). The relevant factors included the fact that defendant "transmitted thousands of electronic communications, including telephone calls, into Florida" and "derived a substantial proportion (15%) of its total revenues from its relationship with Plaintiff in the forum . . . ." Id. Another important factor includes marketing and advertising in the forum state. See Sculptchair, 94 F.3d at 627 (describing defendant's circulation of price list and presentations to Florida businesses).

Here, Silverfish was engaged in a general course of business activity in Florida for a pecuniary benefit. Silverfish sold its sunglasses in Florida hundreds of times, making up a noticeable portion of its total sales. The record demonstrates Silverfish conducted 238 business transactions in Florida from 2005 to 2012. Pl. Resp., ¶ 18. Since 2002, when Silverfish began operating as a business, an average of 7.9% of its sales has come from customers in Florida. Id.; see also Declaration of Defendant Mark Razin (hereinafter "Razin Dec."), ¶ 10. Additionally, from 2005 to 2012 Silverfish advertised in Florida through an assortment of water sports related periodicals which have Florida subscribers. Pl. Resp., ¶ 18. In addition, in 2010 Silverfish participated in a water sports themed advertising video shot in Florida which focused on a water sports activity practiced in Florida. Id.

The cause of action in this case also relates directly to the defendant's contacts with Florida. See Design-Build Concepts, Inc., 2008 WL 686150, at *2. Defendant's primary

contacts with Florida consisted of a website used to sell sunglasses to Florida customers. Plaintiff's cause of action concerns the advertising of this website, specifically concerning customers who might be searching for Plaintiff's sunglasses. The cause of action stems from the Defendant's business selling sunglasses over the Internet. Accordingly, Plaintiff has adequately demonstrated that this Court has personal jurisdiction over Silverfish because it is conducting business pursuant to § 48.193(1)(a).

b. Florida Statutes § 48.193(1)(b)

Silverfish may also be subject to specific jurisdiction under Florida's long-arm statute if Silverfish committed a tortious act in Florida. FLA. STAT. § 48.193(1)(b). This section "permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury within the state." Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008). In Licciardello, the defendant's website, accessible in Florida, allegedly utilized the trademarked name and picture of plaintiff, a well-known musician, implying plaintiff endorsed the defendant as a personal manager. Id. at 1282. "[A]lthough the website was created in Tennessee, the Florida long-arm statute is satisfied if the alleged trademark infringement on the website caused injury in Florida." Id. at 1283; see also HSI IP, Inc. v. Champion Window Mfg. & Supply Co., Inc., 510 F. Supp. 2d 948, 954–55 (M.D. Fla. 2007) (finding that a defendant who allegedly infringed a Florida trademark was subject to specific jurisdiction due to the commission of a tortious act in Florida despite lacking other Florida connections).

Additionally, the "[i]njury from trademark infringement occurs in the state where the trademark owner resides." JB Oxford Holdings, Inc. v. Net Trade, Inc., 76 F. Supp. 2d 1363, 1366-68 (S.D. Fla. 1999) (finding specific jurisdiction but not minimum contacts); see also Licciardello, 544 F.3d at 1283 ("[w]e need not decide whether trademark injury necessarily

occurs where the owner of the mark resides . . . because in this case the alleged infringement clearly also occurred in Florida by virtue of the website's accessibility in Florida.")

Here, SeaSpecs, the trademark owner, is a registered Florida company with a trademark protected by a certificate of registration. Pl. Resp., ¶ 20. The underlying allegation is that Defendant's keyword search methodology utilizes Plaintiff's mark as a trigger for Defendant's advertising to appear. Id., ¶¶ 6–7. Defendant's website has been accessed in Florida on many occasions as evidenced by Florida purchases of Defendant's products. Id., ¶ 20. There is alleged trademark infringement outside of Florida of a trademark owned by a Florida resident, on a website accessible in Florida. This is sufficient to establish specific jurisdiction under § 48.193(1)(b) over Silverfish due to its committing a tortious act in Florida.[2]

2. Mark Razin

Florida's long-arm statute is limited to defendants who act "personally or through an agent." FLA. STAT. § 48.193(1). "The corporate shield doctrine . . . provides that acts performed by a person exclusively in his corporate capacity not in Florida but *in a foreign state* may not form the predicate for the exercise of personal jurisdiction over the employee in a foreign state." Kitroser v. Hurt, 85 So. 3d 1084, 1088 (Fla. 2012) (internal quotations omitted). "[I]t may be unfair to force an individual to defend an action filed against him personally in a forum with which his only relevant contacts are acts performed totally outside the forum state and not for his own benefit but for the exclusive benefit of his employer." Id.

---

[2] Plaintiff also alleges that Silverfish is subject to general jurisdiction under Florida's long-arm statute. Pl. Resp., ¶ 23. Once a basis is established for the assertion of personal jurisdiction under Florida's long-arm statute, the next step is to examine whether the contacts are sufficient pursuant to the Due Process Clause of the Fourteenth Amendment. D.W. Mercer, Inc., 146 F. Supp. 2d at 1276. As it has been established that Silverfish is subject to specific jurisdiction under Florida's long-arm statute, it is not necessary to determine whether Silverfish is also subject to general jurisdiction under the statute.

There are exceptions to the corporate shield doctrine. The doctrine does not apply if the actor is personally present in Florida. Id. at 1089. Rather, it only applies if the "nonresident employee-defendant . . . works only outside of Florida, commits no acts in Florida, and has no personal connection with Florida . . . ." Id.; see also Van Vechten v. Elenson, 12-CV-80668, 2013 WL 359750, at *5 (S.D. Fla. Jan. 29, 2013) (finding that the doctrine is not applicable to a defendant who came to Florida personally to conduct estate sale in which an alleged theft occurred).

The doctrine also does not apply to employee defendants who commit fraud or intentional misconduct. Kitroser, 85 So. 3d at 1088 n.3 (referencing Doe v. Thompson, 620 So. 2d 1004, 1006 (Fla. 1993). This type of conduct has included a "vice-president of [a] corporation who developed and implemented an unfair and deceptive corporate practice aimed at Florida residents" and a "corporate employee who engaged in acts intended to defraud a Florida life insurance company." Oesterle v. Farish, 887 So. 2d 412, 413, 415 (Fla. Dist. Ct. App. 2004) (finding intentional tort through false representations in contract negotiations to sell a Florida business) (referencing Office of Atty. Gen. Dep't of Legal Affairs v. Wyndham Int'l, Inc., 869 So. 2d 592, 598-600 (Fla. Dist. Ct. App. 2004) and Allerton v. State Dep't of Ins., 635 So. 2d 36, 39 (Fla. Dist. Ct. App. 1994)).

Mark Razin, the managing member of Silverfish, resides in California. Razin Dec., ¶¶ 1–2. Razin has never resided, voted, or paid taxes in Florida. Id., ¶ 3. In the past twenty years Razin's physical presence in Florida has been limited to a 2008 personal vacation and a 2002 trip to attend a trade show on behalf of Silverfish. Id. at ¶ 4. Razin has never conducted a business in Florida or been party to a contract in Florida. Id. at ¶¶ 5-6.

Plaintiff claims that trademark infringement is "tortious conduct and as such, Mark Razin is not protected by the corporate shield." Pl. Resp., ¶ 55. However, Plaintiff has not set out any specific acts Razin has personally committed outside his corporate capacity that would amount to fraud or intentional misconduct. Not only is it not evident that Silverfish's alleged trademark infringement constituted a tort on the level of fraud or intentional misconduct, there are no allegations of Razin's personal involvement in any of the alleged trademark infringements or tortious conduct at issue in this case. Thus, Razin is protected by the corporate shield doctrine and there is no personal jurisdiction over Razin under Florida's long-arm statute.[3] This Court will grant the Motion to Dismiss with respect to defendant Mark Razin.

B. Due Process Requirement

An exercise of jurisdiction under a state's long-arm statute must also comport with the Due Process Clause of the Fourteenth Amendment. D.W. Mercer, Inc., 146 F. Supp. 2d at 1276. The due process requirement is met when a defendant has established "minimum contacts" with the state seeking to exercise jurisdiction. Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389, 392 (11th Cir. 1988) (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)). If minimum contacts have been established, the exercise of personal jurisdiction over a defendant must not offend "traditional notions of fair play and substantial justice." Id. This Court will now examine the due process requirements as they pertain to Silverfish.[4]

[3] The corporate shield doctrine is centered on the specific jurisdiction element of the Florida long-arm statute. See Kitroser, 85 So. 3d at 1088. There may also be a separate basis for general jurisdiction over Mark Razin under the statute. However, Plaintiffs have not introduced evidence of Mark Razin's "continuous and systematic general business contact" with Florida as an individual. See Design-Build Concepts, Inc., 2008 WL 686150, at *2; Pl. Resp., ¶¶ 53–56.

[4] Because the Florida long-arm statute does not reach Mark Razin, there is no need to examine the due process requirements as to him. See generally D.W. Mercer, Inc., 146 F. Supp. 2d at 1276 (a two part analysis is required).

1.  Minimum Contacts

"Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant to have 'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign." Madara v. Hall, 916 F.2d 1510, 1516 (11th Cir. 1990) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "This fair warning requirement is satisfied if the defendant has 'purposefully directed' his activities at the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Id. (internal citation omitted). "Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there." Id. (quoting Burger King, 471 U.S. at 474). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). "Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical to the proper exercise of personal jurisdiction is not the ability to see that the acts of third persons may affect the forum, but rather that the defendant's own purposeful acts will have some effect in the forum." Madara, 916 F.2d at 1516–17 (emphasis omitted) (citing Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987)).

These factors can be summarized in a three-part test. See Foreign Imported Prods. & Pub., Inc. v. Grupo Indus. Hotelero, 07-CV-22066, 2008 WL 4724495, at *7 (S.D. Fla. Oct. 24, 2008).

> First, the contacts must be related to the plaintiff's cause of action. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, and third, the defendant's

contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

Id. (citing Posner, 178 F.3d at 1220).

In this case, the contacts are related to the cause of action. Silverfish sells its products on its website, which is accessible to Florida consumers. Pl. Resp., ¶ 32. The website is related to the cause of the action, which consists of trademark infringement involving Silverfish's advertising of its website to prospective customers of Plaintiff using that website.

The second prong concerns whether the defendant purposefully availed itself of the forum. Sales of goods in Florida through websites have been found to be purposeful availment. Purposeful availment was found where a defendant "made at least thirty-nine sales to Florida residents . . ." over a three-year period. Croft v. Lewis, 09-CV-1370, 2010 WL 1707426, at *5 (M.D. Fla. April 1, 2010). "Importantly, there was not an attenuated chain of distribution involved here such that [the defendant] did not expect her products to end up in Florida. Id. Purposeful availment was also found where the defendant's "overall sales delivered to Florida addresses from 2003–2007 were 4.35% of his total sales and amounted to approximately $100,000." Caiazzo v. American Royal Arts Corp., 73 So. 3d 245, 257 (Fla. Dist. Ct. App. 2011).[5] Advertising in the forum state is also relevant. See Nida Corp. v. Nida, 118 F. Supp. 2d 1223, 1232 (M.D. Fla. 2000) (considering advertisements in a periodical distributed in Florida in finding sufficient minimum contacts).

Here, Silverfish purposefully availed itself of the Florida forum. From 2002 to 2012, 7.9% of Silverfish's total sales came from Florida, which includes 238 transactions. Pl. Resp., ¶

---

[5] While the test set out in Zippo Mfg. Co. v. Zippo Dot Com is not dispositive in this circuit, it is important to consider the distinction between passive websites, which do not tend towards purposeful availment, and active or interactive websites, which do tend towards purposeful availment. See Foreign Imported Prods., 2004 WL 4724495, at *7–8 (citing Zippo Mfg. Co. v. Zippo Dot Com, 952 F. Supp. 1119 (W.D. Pa. 1997)). Doing business over the internet is a characteristic of an active or interactive website. Id. at *8.

18. Silverfish has also advertised in magazines with Florida subscribers and sponsored a water sports video shot in Florida. Id. In addition, Silverfish advertisements appear adjacent to Florida surf reports on multiple Internet search engines. Id., ¶¶ 24–26. The facts demonstrate that over time Silverfish has made direct and repeated sales to Florida residents. These were not isolated sales but a repeated source of business. The chain of distribution was not attenuated, but was direct to Florida residents. Additionally, the Silverfish website is interactive, allowing customers to make purchases of regular and prescription sunglasses.

The third factor requires that the contacts be such that the defendant would reasonably anticipate being taken to court in that forum. This prong is satisfied if the defendant's contact with the forum state was more than foreseeable but was purposeful and deliberate. Foreign Imported Prods., 2004 WL 4724495, at *10–11 (finding deliberateness in the marketing and promotion to Florida citizens of a nightclub through business relationships with Florida travel agents and attending trade shows in Florida). The anticipated activity must be of the defendant's own personal acts, as opposed to those of third persons. Madara, 916 F.2d at 1516–17.

Here, the ties to Florida were purposeful and deliberate. Silverfish sold products directly to Florida residents repeatedly and also conducted marketing and advertising related to Florida and water sports in Florida. See Foreign Imported Prods., 2004 WL 4724495, at *11 (discussing purposeful marketing). The sales were not merely a foreseeable result of having a national website, but constituted a regular portion of Silverfish's business. In addition, these business contacts were not through third persons, but occurred directly with Florida residents. This is sufficient to anticipate being taken to court in Florida.

2. Fair Play and Substantial Justice

Courts consider a five factor test to determine if exercising personal jurisdiction would comport with fair play and substantial justice. The factors include:

> 1) [T]he burden on the defendant; 2) the forum's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the states in furthering fundamental substantive social policies.

Croft, 2010 WL 1707426, at *7 (citing Burger King, 471 U.S. at 477).

First, it would likely burden Silverfish to some extent to litigate in Florida, although this burden may be mitigated by modern transportation and communication technology. See Foreign Imported Prods, 2004 WL 4724495 at *11. Next, Florida has a strong interest in the adjudication of the dispute because Plaintiff is a Florida corporation and the injury is to a trademark owned by a Florida resident. See id.; see also Sculptchair, 94 F.3d at 632 (citing "Florida's obvious interest in stamping out . . . economic chicanery"). Additionally, the Plaintiff has a strong interest in convenient relief in Florida. See Foreign Imported Prods, 2004 WL 4724495 at *11; Sculptchair, 94 F.3d at 632. Efficient resolution of the controversy, the fourth factor, would likely be available in both Florida and California, as some evidence and witnesses are likely to be available in either state. As to the final factor, social policy is furthered by allowing Florida residents to have resolution for trademark infringements in Florida. While the results of the balancing test are not overwhelming, on balance the factors indicate that subjecting Silverfish to jurisdiction in Florida comports with notions of fair play and substantial justice. See Sculptchair, 94 F.3d at 632 ("When minimum contacts have been established, often the interests of the plaintiff and the forum . . . will justify even the serious burdens placed on the alien defendant") (citing Asahi, 480 U.S. at 114).

**IV. CONCLUSION**

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (ECF No. 30) is GRANTED IN PART AND DENIED IN PART. All of Plaintiff's claims against MARK RAZIN are DISMISSED WITHOUT PREJUDICE. All other relief requested in Defendant's Motion is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 21st day of March, 2012.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record